THORNAL, Justice.
Appellant Lehman seeks reversal of a final decree against him in a proceeding which he brought to enforce a material-man’s lien.
Appellees Snyders, as owners, entered into a contract with one Hines, as contractor, whereby the latter agreed to build a house for the former. Periodical payments were to be made to the contractor through the agency of Coral Gables Federal Savings and Loan Association, herein called “the bank”, where the Snyders had arranged a construction loan. Hines bought the lumber for the house from Lehman who, within the time allowed by F.S. Section 84.04(1), F.S.A., served upon the owners a so-called “cautionary notice” of an intention to claim a lien for the materials furnished by him. The owners undertook to require from the contractor a bond authorized by F.S. Section 84.05(11) (a), F.S.A., but appellant contends that the bond was insufficient to meet the requirements of the law and that it was tantamount to no bond at all with the result that the owners were obligated to comply with those provisions of the last cited statute which are applicable to situations where a bond is neither required nor furnished.
We find it unnecessary to pass upon the sufficiency of the bond for the reason that it appears from the record that in actuality the owners have met the requirements of the cited statute where no bond is required and that the failure of the materialman to receive payment for the lumber furnished by him resulted from his own doings.
When the building was completed and the time arrived for final settlement with the contractor, the owner properly required the contractor’s statement under oath as necessitated by F.S. Section 84.04(3), F.S. A. The statement listed certain unpaid materialmen but the list did not include appellant Lehman. However, upon the furnishing of the statement under oath, the contractor likewise delivered to the owners Lehman’s bill for lumber which was marked “paid”, together with a complete release of lien also executed by Lehman. It so happened that the contractor had obtained the receipted bill and the release of lien by delivering to Lehman his check for payment in full which check was subsequently returned to Lehman because of insufficient funds of Hines in the bank on which it was drawn. It therefore appeared to the owners when they made final settlement that the appellant had been paid in full, that he no longer claimed any lien and that the only unpaid lienors were those listed in the contractor’s statement under oath. The bank, at the request of the owners, thereupon paid the contractor the balance due him after apparently liquidating the claims of the lienors listed in the statement under oath. Neither the owners nor their bank had any knowledge of the “bad check” before making final settlement with the contractor.
After this transaction was closed and the contractor’s check was returned for insufficiency, Lehman filed a “claim of lien” against the property involved, claiming nonpayment of its lumber bill and alleging failure of the owner to comply with the requirements of F.S. Section 84.05(11) (a), F.S.A., in that he contends that periodical payments were made by the bank without retaining twenty percent of each payment as required by the statute. The provision relied upon by appellant is as follows:
“ * * * If for any reason the contractor fails to furnish the bond * * * the owner shall withhold twenty percent of each payment when it becomes due under the direct contract.”
This same section, however, continues as follows, to-wit:
“And in no event shall the owner pay more than eighty percent of the contract price if the bond is not furnished until the contract has been fully performed and final payment is due and the contractor has furnished the owner statement under oath required by § 84.- *314 04(3). If the statement recites any outstanding bills for labor, services or materials, or if the owner has knowledge of any, the owner shall pay such bills in full direct to the person or firm to whom they are due, if the balance due on the contract is sufficient, and deduct the amounts so paid from the balance due the contractor. If the balance due on the contract is not sufficient to pay all bills in full, the owner shall pay no money to anyone until such time as the contractor has furnished him with the difference. In the event the contractor fails to furnish the difference the owner shall determine the amount due each laborer, lienor, materialman, or subcontractor and shall disburse to them the amounts due by him on the contract in accordance with the order of liens established in § 84.05. * * * ”
The exhibits filed by appellant reveal that, out of a total commitment of $8,126.43 to cover the cost of construction, the bank had a balance available in the amount of $1,904.06 when final settlement was made by the owners with the contractor through the bank. While it is true that the bank made three disbursements on the account to the contractor without apparently retaining twenty percent of each, the fact remains that when the job was completed and the time for final payment arrived the owner through its agent, the bank, had actually withheld more than twenty percent of the contract price and would have been in a position to meet the demand of appellant, at least pro tanto but for the receipted bill and release of the lien executed by appellant himself.
Eliminating the claim of the plaintiff this retained amount was adequate to liquidate the balance due the several subcontractors listed in the contractor’s statement under oath. The owners and the bank had a right to rely upon the release of lien executed by Lehman in making the final disbursements. They did so rely in absolute good faith and in doing so, they closed out the account with the contractor^ and apparently paid off the remaining lienholders. So far as the owners and the bank were informed, Lehman had been paid in full and had cancelled the lien with the result that the effect given to the “cautionary notice” by the statute was eliminated. The appel-lees Snyders rely on various equitable maxims to support the decree of the Chancellor. However, they all add up to the conclusion that having executed the release and the receipted bill and having led the owners and the bank into making the final settlement in reliance upon the release, the ma-terialman Lehman cannot now be heard to disclaim the effect of the release and assert a lien for the unpaid amount due for the materials furnished. The Chancellor so ruled and he was correct in so doing.
The decree appealed from is affirmed.
DREW, C. J., and THOMAS and ROBERTS, JJ., concur.