STURGIS, Judge.
This is an interlocutory appeal by property owners, defendants below, from an order in a suit to foreclose a lien under Chapter 84, Florida Statutes, F.S.A., which granted the plaintiff lienholders’ motion for partial summary decree, holding that plaintiffs were entitled to a lien for the full amount of their claims. Appellants , also seek review of an order denying their petition for rehearing of said order. As the issues on appeal are developed by the first order, it is not necessary to separately treat the latter.
In December 1960 the defendant owners of the subject property contracted with a person who is not a party to this proceeding to construct thereon a veterinary hospital for the contract price of $26,365.40. The contractor did not furnish the bond contemplated by the statute to insure payment of laborers, subcontractors, and ma-terialmen on the job. The contract provided for three progress payments of $8,-333.33 each to be made at stated intervals. *143 The first and second payments were made, totaling $16,666.66, but the owners did not withhold 20% thereof as required by Section 84.05(11) (a), Florida Statutes 1961, F.S.A.[1] in those instances where, as in this case, the owner fails to exact the mentioned bond of the contractor.
After receiving the second progress payment and prior to completion of the improvement, the direct contractor abandoned the job. At that time the lienors had not furnished owners with the cautionary notice provided by F.S. § 84.04, F.S.A. and there remained in owners’ hands the sum of $9,689.73 on account of the contract price. Shortly thereafter the lienors filed their claims of lien and served copies on owners in accordance with F.S. §§ 84.14, 84.16, and 84.19, F.S.A. In the meantime the owners, without making any attempt to distribute said unpaid balance among the lienors, resumed work on the improvement. However, on May 27, 1961, which was less than 20 days after the contract was abandoned, owners offered to disburse to the lienors ratably in settlement of their claims the said unpaid balance of the contract price. The claims totaled more than that amount and the lienors rejected the offer. Three days later they brought this suit to foreclose their alleged liens in the full amount claimed.
We pause at this juncture to take note of the fact that if the owners had strictly complied with the statutory provision requiring “twenty per cent of each [progress] payment” to be withheld when it became “due under the direct contract,” the total amount that would have been available to the lienors is $3,333.33, representing 20% of the $16,666.66 advance payment; and further, that if the contract had been fully completed by the direct contractor and if the owners had strictly complied with the statutory provision prohibiting them from paying “more than eighty per cent of the contract price * * * until * * * the contractor has furnished the owner statement under oath required by § 84.04 (3),” etc., the total amount available to the lienors would have been $5,273.08, representing 20% of the $26,365.40 contract *144 price. See F.S. § 84.05(11) (a), F.S.A.; footnote 1. In either event the amount available for proration among the lienors would have been substantially less than the $9,689.73 balance of the contract price which the owners offered to prorate among them in settlement of their claims.
On the basis of the above recited essential facts, the plaintiff lienors (appellees) moved the trial court to enter a summary decree in their favor on the issue of whether the property which is the subject of this suit is impressed with a lien for the full amount due plaintiffs for work done and materials furnished by them.
In granting said motion the chancellor held, inter alia, and we agree, that on the authority of Lehman v. Snyder, 84 So.2d 312 (Fla.1956), and Sinclair Refining Co. v. J. H. Cobb, Inc., 112 So.2d 582 (Fla.App.1959), and in view of the fact that the sum remaining in the hands of the owners for the benefit of the lienors was in excess of 20% of the total contract price, the owners were not materially in violation of F.S. § 84.05(11) (a), F.S.A. for having failed to deduct and withhold from the direct contractor 20% of the progress payments at the time they were made.
The order appealed contains the following critical comment which forms the basis for the partial summary judgment in question :
“Plaintiffs further contend that after abandonment by the general contractor the Defendants MARTIN commenced completion of the improvement without disbursing the funds withheld by them, and that under the terms of the statute that the property improved should be subject to a lien in the full amount of any and all outstanding bills for labor, services or materials furnished for such improvement. This contention of Plaintiffs must be sustained. The statute is clear and unambiguous in its mandatory requirement that prior to commencing completion after an abandonment the funds withheld must be disbursed as required therein. This the Defendants MARTIN did not do. There appears to be no case construing this provision of the statute and in light of the clear mandate thereof the Court is compelled to grant Plaintiffs’ Motion. The Legislature originally enacted this statute in 1953 and reenacted the same within a very short time after the same was declared unconstitutional in Greenblatt v. Goldin, 94 So.2d 355 (Fla.1957), indicating a clear intention that this requirement become and remain a part of the Florida Mechanics’ Lien law. The law may appear to be harsh in this instance but the requirement is clear. The Legislature has twice enacted this provision. The passage from the opinion of Justice O’Connell in All State Pipe Supply Co. v. McNair, 89 So.2d 774, 775 (Fla.1956) as follows is appropriate :
“ ‘There is nothing to be gained in condemning or applauding the Mechanics’ Lien Law for it is the law of this State. Admittedly, it is harsh in many respects, as applied to an owner, and no one improving property can ignore its provisions without coming to grief.’ ”
We do not interpret the quoted excerpt from All State Pipe Supply Co. as having the connotation accorded to it in application to this case. We are persuaded that the equitable considerations controlling the decisions in Lehman v. Snyder and Sinclair Refining Co. v. J. H. Cobb, Inc., supra, apply hereto with greater force.
A cursory examination of the statute (footnote 1) compels the conclusion that it is so vague and contradictory — in respect to those provisions which purport to state the procedure to be followed by the owner in the event the direct contractor abandons the work and consequent thereon fails to furnish the owner with the statement under oath required by F.S. § *145 84.04(3), F.S.A.[2] or to furnish the owner with the money required to make up the amount needed to fully discharge lienors’ claims — as to afford no competent procedure which the owner can follow with reasonable certainty that in so doing he will avoid the liability, in the nature of a penalty, which the order appealed imposes for the sole reason stated by the above excerpt therefrom. Under such circumstances, and especially where the owner has with reasonable diligence made a bona fide effort to avoid the penalty provisions of the statute, as was done in this case by the offer to prorate among the lienors the $9,689.73 balance of the contract price — an amount which is seen to be substantially in excess of the amount that would have been available upon compliance with the statute in the manner contended by appellees — , and where the procedural provisions of the statute in relation to the factual situation involved are vague, impossible of strict performance, and contradictory, to the extent that manifest injustice would result if the owners were compelled to distribute the funds withheld prior to commencing completion of the improvement, as is evident in this case, equitable principles dictate that a penalty of the nature exacted by the order appealed should not be invoked.
Section 84.05(11) (a), Florida Statutes, F.S.A., provides the following procedure:
(1)The owner is required to withhold 20% of each progress payment falling-due under the direct contract. (The chancellor held and we agree that appellants were in substantial compliance with this provision.)
(2) The owners are directed not to pay to the contractor more than 80% of the contract price until (a) the contract is fully performed, (b) the final payment on the contract price has become due, and (c) the contractor has furnished the owner with the statement under oath as required by F.S. § 84.04(3), F.S.A. (The chancellor held and we agree that appellants were in compliance with this provision.)
(3) Where the contractor (a) furnished the mentioned statement and it reflects outstanding bills for labor, services, or materials, or (b) where the owner has knowledge of such, and (c) where the unpaid balance due on the contract price is sufficient to pay such bills in full, the owner is required to pay the same direct to the person or firm to whom due, and is entitled to deduct the amount so paid from the balance due the contractor. (This procedural requirement is inapplicable to the case on appeal because the contractor did not furnish the required statement and the owner did not have knowledge of the lienors’ claims.)
(4) Where the balance due on the contract is not sufficient to pay said bills in full, as in this case, the owner is directed not to pay any money to anyone “until such time as the contractor has furnished him with the [money] difference”, and it is further provided that “in the event the contractor fails to furnish the difference the owner shall determine the amount due each laborer, lienor, materialman or subcontractor and shall disburse to them the amounts due by him on the contract in accordance with the order of liens” established by the statute.
*146 The statute then provides that “In the event the improvement is abandoned prior to completion, the owner shall follow the above procedure and disburse the funds withheld by him before commencing completion of the improvement”, and further:
“When the bond is not furnished nor the twenty per cent of each payment withheld and disbursed as required by this subsection, the property improved shall be subject to a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement; provided a claim of lien is filed of record within three months as required by § 84.16, and action to enforce it is commenced within one year from date of filing, in accordance with § 84.21, or the lienor has been made a party defendant in an action involving the real property described in the claim of lien within the same period of time and upon disposition of such action the lienor’s claim shall be discharged.”
The specified procedure is impossible of performance in those instances where, as here, the direct contractor has not only abandoned the improvement but has failed to furnish the owner with the statement required by § 84.04(3) or with the difference in money required to make up the full amount of lienors’ claims. It is inconceivable that the legislature intended to amerce an owner faced with the dilemma ■of appellants and who is ready and willing to disburse to the lienors the full amount and more than they would have been entitled to receive had every conceivable facet of the statute been complied with, with a penalty for having commenced work toward completing the abandoned project prior to making disbursement of said amount to the lienors ratably. The statute furnishes no competent guide to the procedure to be followed by owners in order to insure the procurance from the defaulting contractor of the statement under oath and funds which he is required to furnish and which are vitally necessary to be available in owner’s hands so that he may be equipped to make distribution of funds to the lienors as contemplated by the statute. This hiatus is not efficiently removed by the provisions relating to the filing and enforcment of lienors’ claims.
The equitable principles enunciated by the Florida Supreme Court in Lehman v. Snyder (Fla.1956), 84 So.2d 312, followed by the Second District Court of Appeal in Sinclair Refining Co. v. J. H. Cobb, Inc. (Fla.1959), 112 So.2d 582, and inherent in the decision of this court in Ludwig & Kibbey Enterprises v. Cox Steel & Supply, Inc. (Fla.App.1960), 119 So.2d 58, are determinative of this appeal.
In the Sinclair Refining Co. case, Kan-ner, J., speaking for the Second District Court of Appeal, recognized the equitable considerations underlying the persuasive dictum of the Supreme Court in Lehman v. Snyder, and pointed out that while three disbursements were made to the contractor in Lehman without apparently retaining 20% of each, the fact remained that when the job was completed and the time for final payment arrived, the owner had actually withheld more than 20% of the contract price, and in relating that dictum to the Sinclair Refining Co. case said at page 587 of 112 So.2d:
“The figure which resulted as payable in the final column of the invoice under appellant’s method of procedure is the same figure which would have resulted had the contract provided for withholding 20 per cent of the gross instead of providing that the invoice should be for only 80 per cent of the gross. * * * We must recognize that the 20 per cent withholding provision must be considered in connection with the complete section, particularly with that portion specifying an 80 per cent statutory limitation on overall payment of the contract price until the contract is fully performed, final payment is due, and the contractor has furnished the required statement under oath. Consequently, the end result of the payments made by *147 the appellant under the contract provision attained the purpose of the statute, and this conclusion is supported by the dictum contained in the case of Lehman v. Snyder, supra.” (Emphasis supplied)
We too recognize that the withholding. provisions must be considered in connection with the complete section. Applying the rationale of the above quotation from Sinclair to the facts in this case, and having in mind that the failure of the contractor to furnish the statement required of him under F.S. § 84.04(3), F.S.A. or to furnish the funds required of him under F.S. § 84.05(11) (a), F.S.A. necessary to make up the difference between lienors’ claims and the amount withheld by owners, it is seen that it was impossible for the owners to promptly disburse the funds withheld, and that they were also presented with the very practical problem of what to do in order to protect their property rights, for which the statute provides no clear or adequate procedure. In line with Sinclair, we hold that the end result of the tender made by the appellants under the circumstances of this case was sufficient to attain the purpose of the statute and that lienors are entitled to no greater amount than that tendered, notwithstanding the fact that owners commenced completion of the improvement prior to such tender.
The quoted passage from the opinion of Justice O’Connell in All State Pipe Supply Co. v. McNair, 89 So.2d 774 (Fla.1956), as found in the order appealed, is inapplicable because the facts in that case reflect that the contract was completed and the owner paid the direct contractor the entire balance of the contract price without receiving or demanding the affidavit required by § 84.04(3). The decision in that case had to do with circumstances affording the owner a ready means of compliance with the statute. The circumstances in the case on appeal afforded no such means. The Mechanic’s Lien Law is designed primarily to protect the lienor to the extent provided, not to penalize or harass the owner. Being in derogation of the common law, its application should not be extended beyond the scope of the language of the act. While each case will be governed by the peculiar facts and cir--cumstances applicable to it, it will be re--membered that these proceedings are in equity and that general equitable princi-. pies apply.
Having concluded that the court was in-error on other grounds, we will not undertake to pass upon the constitutionality of the statute involved. State ex rel. Bankers Life & Cas. Co. v. Village of North Palm Beach (Fla.App.), 138 So.2d 378; Green v. Peters (Fla.App.), 140 So.2d 601.
Reversed and remanded for proceedings, consistent herewith.
CARROLL, DONALD- K., C. J., and. RAWLS, J., concur.

. F.S. s 84.05(11) (a), F.S.A. provides, inter alia: I
•• * - * the owner shall not pay any money on account of the direct contract prior to the visible commencement of operations and any amount so paid shall be held improperly paid, and the owner shall withhold twenty per cent of each payment when it becomes due under the direct contract. In no event shall the owner pay more than eighty per cent of the contract price if the bond is not furnished until the contract has been fully performed and final payment is due and the contractor has furnished the owner statement under oath required by § 84.-04(8). If the statement recites any outstanding bills for labor, services or materials, or if the owner has knowledge of any, the owner shall pay such bills in full direct to the person or firm to whom they are due, if the balance due on the contract is sufficient, and deduct the amounts so paid from the balance due the contractor. If the balance due on the contract is not sufficient to pay all bills in full, the owner shall pay no money to anyone until such time as the contractor has furnished him with the difference. In the event the contractor fails to furnish the difference the owner shall determine the amount due each laborer, lienor, materialman or subcontractor and shall disburse to them the amounts due by him on the contract in accordance with the order of liens established herein. In the event the improvement is abandoned prior to completion, the owner shall follow the above procedure and disburse the funds withheld by him before commencing completion of the improvement. When the bond is not furnished nor the twenty per cent of each payment withheld and disbursed as required by this subsection, the property improved shall be subject to a lien in the full amount of any and all outstanding bills for labor, services, or materials furnished for such improvement; provided a claim of lien is filed of record within three months as required by § 84.16, and action to enforce it is commenced within one year from date of filing, in accordance with § 84.21, or the lienor has been made a party defendant in an action involving the real property described in the claim of lien within the same period of time and upon disposition of such action the lienor’s claim shall be discharged.”

. F.S. § 84.04(3), F.S.A. provides:
“When final payment becomes due the contractor from the owner, the contractor shall give to the owner a statement under oath stating, if that be the fact, that all lienors contracting directly with or directly employed by such contractor have been paid in full or, if the fact be otherwise, showing the name of each such lienor who has not been paid in full and the amount due or to become due each for labor or services performed or materials furnished and describing in a general way such labor, services, or materials. The contractor shall have no lien or right of action against the owner for labor or services performed or materials furnished under his contract while in default by reason of not giving the owner such statement under oath.”