81 So.2d 489 (1955)
TREMONT COMPANY, Appellant,
v.
H.A. PAASCHE et al., Appellees.
Supreme Court of Florida. Special Division A.
June 17, 1955.
Rehearing Denied July 21, 1955.
*490 Lamson & Smith, Herbert Lamson and Lloyd Smith, Jacksonville, for appellant.
Thomas M. Linton, Fernandina, for appellees H.A. Paasche and R.A. Soltvedt.
Thomas J. Shave, Jr., Fernandina, and Patterson, Freeman, Richardson & Watson, Jacksonville, for L.E. Wolters, et al.
J.W. PettyJohn and Bedell & Bedell, Jacksonville, for Gustav G. Gerbing, appellee and cross-appellant.
SANDLER, Associate Justice.
This is an appeal from a Final Decree foreclosing liens for labor and materials furnished in the construction of a number of motor cottages. The suit is in the nature of a three-cornered proceeding involving the separate interests of the appellant, Tremont Company, present owner of the property involved, appellee Gerbing a cross-appellant in this proceeding, who was the owner when the improvements were constructed and who has since conveyed the property to Tremont Company, and the appellee lien holders who were the original complainants, now also cross-appellants.
Gerbing, the original owner, entered into a contract of sale as vendor with E.H. Price as vendee, part of the consideration being the agreement on the part of Price to erect motels on the lots involved, which would be beneficial to Gerbing by reason of the ownership by Gerbing of adjoining property. A memorandum of the transaction shows that "the most reasonable price" quoted by Gerbing was based upon the understanding that Price would go through with the building program. Gerbing's purpose was likewise evidenced in a similar agreement with an associate of Price as to other lands close by. A model cabin was first built to determine the cost, which was approximately $4,000, and which was paid for by Gerbing before the construction of the cabins or cottages involved in this suit was commenced. Nine additional cabins were constructed during which time Gerbing was present, advanced the sum of $8,000 for the purpose of enabling Price to meet the weekly payrolls, and otherwise kept track of the construction and progress being made. In addition Gerbing agreed to supply water to all of the cabins at his own expense. Upon default by Price, Gerbing notified the plaintiffs that he had retaken possession of the premises "for the benefit of the creditors". The rents collected from the first or model cabin were retained by Gerbing for his own account, but the rents from the remaining nine cabins were kept in a separate account for the benefit of creditors, and subsequently paid over to Tremont Company. It is clear from the testimony that Gerbing had a real and substantial interest in the construction of the premises.
The Fernandina Lumber & Supply Company is the largest of the creditors, its claim amounting to substantially more than all the rest. The stock in the lumber company is owned by W.M. Mason, J.H. Van Hoy, and E.L. Hiller, while the Mason family owns 83 of the 85 shares of the outstanding stock of the Tremont Company. Gerbing advised Mason and Van Hoy that he had an offer of $30,000 for the property but was willing to take $15,000 for his equity, representing repayment of his advances of $12,000, being $4,000 for the construction of the first cabin, $8,000 advanced *491 to meet the payrolls on the other nine, plus $3,000 for the land, which sum was advanced in equal proportions by Mason and Van Hoy, paid to Gerbing, and at the request of Van Hoy and Mason, Gerbing conveyed the property to the Tremont Company, and warranted it to be free and clear of liens, although of course the Tremont Company had actual knowledge of the situation, and the liens claimed and filed against the property. An attempt to organize a corporation to handle the property for the benefit of all the creditors was made, but the parties were unable to get together, and this suit resulted. The respective claims of lien on behalf of the several plaintiffs were filed and Gerbing informed them of his willingness to work with them in order to see that their claims were protected.
The bill of complaint, that is, the last amended bill of complaint on which the case was tried was predicated on the theory that Price, in construction of the cottages, was acting as the agent of Gerbing. The Special Master to whom the case was referred determined that since there was no proof of agency, there being no privity of contract with Gerbing, the liens could not be sustained, and recommended a dismissal of the suit. The trial court did not agree with the Master's findings, sustained exceptions thereto, and held that since construction of the cottages had been required by the contract with Price, as vendee, that since Price was obligated to construct the cottages, the basis for the liens was laid by Gerbing in his contract of sale, and that his interest as owner was properly bound by statutory as well as equitable liens. Equitable liens "may be declared by a court of equity out of a general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings." Ross v. Gerung, Fla., 69 So.2d 650, 652. The trial court also determined and so held that it would be inequitable to require Gerbing under his warranty deed to reimburse Tremont Company for the lien of the lumber company because of the related ownership between Tremont Company and the lumber company, but declined to rule on whether or not Gerbing was liable under the warranty deed to Tremont Company because of the remaining liens.
Gerbing has cross-appealed from this decree which fastens the liens on the fee of the property, that is the interest of both Gerbing as vendor and Price as vendee, and from so much of the decree which refuses to rule upon the question of his liability under the warranty deed as to the remaining liens.
The Final Decree awarded the liens against all the premises except the original or model cottage, which was constructed and paid for before the construction of the remaining nine cottages was commenced, and this forms the basis of the appeal on behalf of the lienors.
Under the ordinary contract of sale, which at most simply permits construction by a vendee, the authorities are to the effect, and this is in accordance with our statute, that the lien of a laborer or materialman in privity only with the vendee does not attach to the interest of the vendor, but where the contract between the vendor and vendee expressly requires construction by the vendee, or where the construction is the gist of the contract, then the courts that have passed upon the question have almost unanimously held that the lien attaches both to the interests of the vendor and the vendee. Some hold that the vendor by such a contract has made the vendee his agent for the purpose of construction. Others that the vendor by the contract has expressly consented to the construction. Others that it would be inequitable to permit the vendor or his vendee under such circumstances to claim the benefits of the improvements but deny the claims of the laborers and materialmen who have provided the improvements pursuant to such a contract.
In 58 A.L.R., at page 922 where this question is annotated, it is said: "Where in a contract of sale of realty it is expressly provided that the vendee erect buildings or improvements on the premises, or the vendor authorize the erection of such buildings *492 or improvements, the improvements made under such a contract are deemed to be with the owner's consent within the meaning of the statute providing for liens for improvements made with the owner's consent." And cases there cited.
In 57 C.J.S., Mechanics' Liens, § 71, pp. 573, 574, it is said: "While there is some authority to the contrary, as a general rule, where the contract of purchase expressly requires or obligates the purchaser to erect certain buildings or make certain improvements, the interest of the vendor becomes subject to the liens of persons furnishing labor and materials for the buildings or improvements, even though the vendee forfeits his contract, it being considered that the vendor consents to the improvements or makes the vendee his agent."
See also 36 Am.Juris. p. 72. Additional cases may be cited, but these authorities are illustrative of the general rule. Gerbing by obligating his vendee to construct the cottages which were for his benefit subjected his interest in the property to possible liens incurred in construction of improvements thereon. In Lehigh Structural Steel Co. v. Joseph Langner, Inc., Fla., 43 So.2d 335, at page 338, this Court said:
"For the purpose of the following general discussion, the term `owner' may be deemed to apply to a lessee who contracts for the improvement of the leased property, as well as to a fee simple title holder who so contracts, since Section 84.01, Florida Statutes, 1941, F.S.A. defines `owner' as `the owner of real property or any interest therein who enters into a contract for the improvement of such real property'."
Appellants appear to get some comfort out of the case of Arbuthnot v. Moody Co. Inc., 115 Fla. 503, 155 So. 840, but the holding of the Court in that case is:
"Vendor's mere knowledge that material is being furnished to her contract vendee and failure to protest against it did not render her liable personally or subject her interest in property or that of her grantee to lien for material."
so that the facts in that case are not applicable to the facts in this one.
We find no error in the decree of the lower court awarding the liens against the fee in the property involved.
The lien holders have cross-appealed, it being their contention that they are entitled to liens against all the premises including the original or model cottage, all of which was completed and paid for before the commencement of the construction of the remaining nine cabins, so that the lienors extended no credit on the strength or basis of the model cabin, and we likewise see no error in the decree of the trial court excluding or excepting this portion of the lot from the effect of the liens.
There remains for consideration the cross-assignment of Gerbing, who sought to have the question of his liability under the warranty deed to Tremont Company determined in respect to the remaining liens, and which the trial judge in his decree did not pass upon, expressly excepting this question from the effect of the decree.
Tremont Company took title, although it is true by deed which warranted the premises to be free and clear of liens, with actual knowledge of the existence of the liens, the consideration for the deed being paid by Mason and Van Hoy, the real purpose of which was to pay Gerbing for his equity in the property and to attempt to salvage it for the benefit of all the creditors, so that Tremont Company is now in no position to hold Gerbing liable on his warranty for the amounts of the liens allowed in addition to the lien of the lumber company. It is a well settled principle of equity, too well settled to require the citation of authorities, that once equity takes jurisdiction it will retain the same for all purposes, to give full, complete and adequate relief as between all parties touching the subject matter involved therein.
While it is true that the counter claim of Gerbing was stricken, nevertheless the question is involved in the subject matter, is between the parties and for all practical *493 purposes was litigated in this case, so we see no reason to except it from the effects of the decree so as to cause additional litigation. Hollywood, Inc., v. Clark, 153 Fla. 501, 15 So.2d 175. The $15,000, the purchase price of Gerbing's interest, was paid by Mason and Van Hoy, and for reasons not clear in the record, at their request the title was placed in the Tremont Company, and all parties had actual knowledge of the existence of the liens. The Tremont Company did not rely on the warranty deed in the taking of title, which was in fact for the purpose of attempting to work out something for the benefit of all creditors.
We see no theory under which, in the facts in this case, Gerbing can be held liable under his warranty to Tremont Company on the remaining claims, and the decree should be revised to so find and set this question at rest in this suit.
Accordingly, the decree is affirmed with directions to revise the decree in accordance with this opinion.
It is so ordered.
DREW, C.J., and TERRELL and THORNAL, JJ., concur.