FUS SELL, CARROLL W., Associate Judge.
This is the second appearance of this case in this court. Substantially the same legal matters were strenuously argued before the court at that time when the appellant sought reversal of an order of the Circuit Court •denying appellant’s motion for a partial summary final decree. The order of the lower court was affirmed by this court, Frank v. Groo, Fla.App.1962, 139 So.2d 757.
The issues involved in this appeal, the court’s findings on the facts, and its rulings, are contained in the final decree of the lower court, the appropriate portions of which are as follows:
“This suit was brought by Floyd Groo and R. K. Michaels, Engineers, as plaintiffs, against Lakes, Inc., a Florida corporation; William H. Beardall, as Trustee; and Robert R. Frank, as Trustee, as defendants. Briefly, the plaintiffs’ amended complaint alleged that the defendant Frank was the owner of 285.66 acres of land in Orange County; that the defendants Beardall and Lakes, Inc. were the holders of an option to purchase said land from the defendant Frank, copies of the option agreement and amendment being attached to the complaint; that the defendant Lakes, Inc. was required to develop said land by the option agreement; that there was a parol joint venture among the defendants for the purpose of developing said land; that the plaintiffs rendered engineering and surveying services to the value of $23,034.-87 in connection with the development of said land pursuant to a contract with the defendant Lakes, Inc.; that said services were rendered with the knowledge and consent of the defendant Frank; that the defendants had paid nothing to the plaintiffs and that the whole sum of $23,034.87 was due plaintiffs; and that the plaintiffs had filed and served their claim of lien. Plaintiffs prayed for a mechanics’ lien or an equitable lien.
******
“The defendant Frank answered admitting that he was the owner of the land and that he had given the defendants Beardall and Lakes, Inc. an option to purchase the land. He denied that the option agreement required the development of the land, that he was a party to a joint venture agreement for the development of the land, and that the engineering and surveying services alleged to have been furnished by the *121 plaintiffs were furnished with his knowledge or consent. He alleged that he was without knowledge as to the contract between the plaintiffs and the defendant Lakes, Inc. and as to the amount due the plaintiffs from the other defendants. He admitted the filing of the claim of lien, service of a copy of the claim of lien on him, and that he had paid nothing to the plaintiffs. He denied owing anything to the plaintiffs.
“At the time of filing his answer the defendant Frank filed a counterclaim against the plaintiffs and a cross claim against the defendants Beardall and Lakes, Inc. He alleged the execution of the option agreement and amendment thereto; that he was still the owner of the land; that the defendants Beardall and Lakes, Inc. had defaulted under the option agreement in five respects; that, because of said defaults, he elected to terminate the option agreement or, if the Court should construe the option agreement to be an executory contract, he elected to accelerate it and foreclose; that the option agreement had been recorded and that it constituted a cloud on his title which he was entitled to have removed; that the lien of the plaintiffs, if any, was a lien only on the interest of the defendants Beardall and Lakes, Inc.; and that the lien of the plaintiffs, if any, was subordinate and inferior to his title and was subject to foreclosure on quieting. Frank prayed for a decree quieting his title or, in the alternative, foreclosing the option agreement, against the claims of the plaintiffs and the defendants Beardall and Lakes, Inc.
“The matter came on for trial on October 8 and 9, 1963. The Court has considered the pleadings, the testimony adduced by the parties, and the argument of counsel. The Court thereupon finds:
“1. That on or about October 16, 1959, the defendant Robert R. Frank, as Trustee, was the fee simple owner of the following described real property in Orange County, Florida: * * * (Description omitted)
“2. That on or about October 16, 1959, the defendant Robert R. Frank, as Trustee, entered into an agreement styled ‘Option to Purchase Agreement’ with the defendant William H. Beard-all, Trustee. Said agreement was dated October 16, 1959. Said agreement was filed in evidence by each of the parties. Said agreement is essentially an option granting to the defendant William H. Beardall, Trustee, the option to purchase the above described real property on certain terms and conditions. Said agreement was supplemented by an agreement styled ‘Amendment to Option Agreement’, also dated October 16, 1959, and also filed in evidence by each of the parties. The Option to Purchase Agreement as amended contemplated, although it did not require, that the optionee Beardall would develop the land for residential subdivision. The Option to Purchase Agreement as amended also contemplated that the optionee Beardall would assign his interest to the defendant Lakes, Inc., although no formal assignment from Beardall to Lakes, Inc. appears to have been made.
“3. That on or about December 10, 1959, the plaintiffs Floyd Groo and R. K. Michaels entered into a contract with the defendant Lakes, Inc. for professional engineering and surveying work in connection with the subdividing, platting, street paving, drainage, sanitary sewage collection and treatment, and water supply and distribution facilities for the proposed subdivision of the above described tract of land. It is uncontroverted that the plaintiffs rendered services pursuant to said contract and that the defendant Lakes, Inc. is indebted to the pliintiffs in the sum of $23,034.87 for said services. It is *122 uncontroverted that the plaintiffs dealt solely with the defendant Lakes, Inc. and that the plaintiffs were never in direct contact with the defendant Robert R. Frank, as Trustee, and never rendered any statement to him.
“4. That the plaintiffs are entitled to an equitable lien on 20 acres of land in the northeast comer of the 285.66 acre tract of land. The parties have stipulated that the correct legal description of said 20 acre tract is as follows: * * * (Description omitted). The Court does not construe the option to purchase agreement and amendment thereto to require the optionee to develop all of the land and therefore the plaintiffs are not entitled to a mechanics’ lien extending to the title of the defendant Frank under the provisions of Section 84.04(2), Florida Statutes; however, the option to purchase agreement and amendment thereto recognize that the purpose of the optionee was to develop the property for residences; that a plat of at least 20 acres in the northeast corner was to be prepared and approved by the County Commissioners and this was done on June 6, 1960, and a copy of the plat was furnished to Frank; that because of the requirements of the Orange County Zoning Act, it was a matter of common knowledge that all problems relating to the development of the land, such as drainage, paving, sewerage, etc., would have to be worked out by engineers before the plat was prepared by them; and that the defendant Frank knew or should have known that this work would be done and was done.
* * * * * *
“ORDERED, ADJUDGED AND DECREED :
“1. That the defendant Lakes, Inc. is indebted to the plaintiffs Floyd Groo and Lillian E. Michaels, as Executrix of the Estate of R. K. Michaels, Deceased, the sum of $23,034.87 for engineering and surveying services furnished the said defendant.
“2. That the plaintiffs are entitled to an equitable lien taking priority from the date of this decree on the following described property in Orange County, Florida: * * * (Description omitted) to secure the payment of the sum found to be due them above.
******
“4. That the defendant Robert R. Frank, as Trustee, holds a vendor’s lien on the following described real property in Orange County, Florida: * * * (Description omitted) to secure the payment of the sum found to be due to him above. Said vendor’s lien is subordinate to the equitable lien of the plaintiffs found in Paragraph 2 above. * * * ”
We find the evidence sufficient to sustain the findings of fact made by the lower court.
One objection made by the appellant is that matters of estoppel are neither pleaded nor proven. However, the complaint alleges the option agreement which is, in fact, a contract of purchase and was so determined and considered by the court, a decree of foreclosure being entered thereon, and property other than that involved on this appeal being foreclosed upon and sold under this decree. The complaint also alleges that the work was done with the knowledge and consent of the appellant Frank.
Paragraph 5 of the findings of the court sets out specifically the findings of fact based on the evidence which indicate the basis for the estoppel.
It is next the contention of appellant that the case of Tremont Co. v. Paasche, Fla.1955, 81 So.2d 489, relied on and cited by the appellee as authority for the decree in favor of the appellee for an equitable lien *123 on the interest of the appellant, is not applicable, because in that case the court held:
“ * * * Gerbing by obligating his ■vendee to construct the cottages which were for his benefit subjected his inter•est in the property to possible liens incurred in construction of improvements thereon. * * * ”
Appellant then cites the decree of the ■chancellor and the lower court finding that there was no provision in the option agreement requiring the performance of the services rendered by appellees, and that there was no contract or agreement between appellees and appellant Frank obligating the ■appellant Frank to pay for such services.
 It is recognized principle of law in cases involving equitable liens, as quoted by the court in the case of Phelps v. T. O. Mahaffey, Inc., Fla.App.1963, 156 So.2d 900, that:
“ * * * An equitable lien is based upon the fundamental maxim of equity that no one shall be unjustly enriched at the expense of another. Such a lien may be implied and declared out of general considerations of right and justice. * * * ”
See Scott v. Kirtley, 1933, 113 Fla. 637, 152 So. 721, 93 A.L.R. 661; and in the case of Tremont Co. v. Paasche, supra, the court :stated:
“Under the ordinary contract of sale, which at most simply permits construction by a vendee, the authorities are to the effect, and this is in accordance with our statute, that the lien of a laborer or materialman in privity only with the vendee does not attach to the interest of the vendor, but where the contract between the vendor and ven-dee expressly requires construction by the vendee, or where the construction is the gist of the contract, then the courts that have passed upon the question have almost unanimously held that the lien attaches both to the interests of the vendor and the vendee. Some hold that the vendor by such a contract has made the vendee his agent for the purpose of construction. Others that the vendor by the contract has expressly consented to the construction. Others that it would be inequitable to permit the vendor or his vendee under such circumstances to claim the benefits of the improvements but deny the claims of the laborers and materialmen who have provided the improvements pursuant to such a contract.” (emphasis supplied)
In the findings of the lower court in the instant case it is stated:
“* * * [Hjowever, the option to purchase agreement and amendment thereto recognize that the purpose of the optionee was to develop the property for residences; that a plat of at least 20 acres in the northeast corner was to be prepared and approved by the County Commissioners and this was done on June 6, 1960 and a copy of the plat was furnished to Frank; that because of the requirements of the Orange County Zoning Act, it was a matter of common knowledge that all problems relating to the development of the land, such as drainage, paving, sewerage, etc., would have to be worked out by engineers before the plat was prepared by them; and that the defendant Frank knew or should have known that this work would be done and was done.”
In addition, we call attention to the fact that the contract for the work performed by appellee was made by Lakes, Inc., and Paragraph 10 of the option to purchase agreement states that:
“Lakes, Inc., a Florida corporation, has been formed for the purpose of developing all of the subject property * * * [with certain exceptions], and the party of the first part [Frank] consents to the assignment of said *124 portion of the subject option to Lakes, Inc. * * * [a]s partial consideration for the option granted herein, and as partial consideration of the purchase price the party of the second part agrees that the party of the first part [Frank] shall have a twenty-five (25%) percent interest in the capital stock of Lakes, Inc. which shall include the development of home sites and utility plant. In the event the party of the second part desires to use a format of two (2) corporations, i. e., one corporation for development of home sites, and one corporation for construction and servicing of utility services then a second corporation may be formed and in such event the party of the first part [Frank] shall have a twenty-five (25%) percent interest in the capital stock of each of said corporations. The party of the first part [Frank] shall not be required to pay any sum whatever toward the capital contribution for the stock afore described. * * * ”
It was, therefore, clear that the development of the property was the gist of the option. Appellant Frank knew that the services performed by the appellees would be required before the development could take place.
There is evidence that Frank knew that the work was being done, made inquiry regarding the progress of the work, and requested and was sent some of the work products of appellees for his own use; and in addition, by the terms of the option to purchase itself appellant Frank was to be the owner of one-fourth of the capital stock of the corporation, Lakes, Inc., and of any other corporation formed to carry on the development, and was thus to share in the contemplated profits to be derived from the development made possible by the work of the appellees.
We feel that the evidence of estop-pel is clear in this case and that appellant Frank should not be permitted to benefit from the work performed by the appellees without in turn being responsible for the payment for these services through an equitable lien on the 20 acres of land involved.
Another contention on the part of the appellant is that since the plaintiffs had due notice of the true state of the title before performing their services, they were not entitled to an equitable lien. It is then contended that the deed showing the appellant Frank to be the owner of the lands was on record, as well as the option agreement, and that even though the defendants did not know, they could have known and were put on notice by the record. In the case of Armstrong v. Blackadar, Fla.App.1960, 118 So.2d 854, this situation existed, in that the equitable lien was claimed against the father who was the record owner of the land, where the repairs had been requested by the son who claimed that he was the owner of the land. In this case the plaintiff could also have determined that the father was the owner of the land, but the equitable lien was allowed because the father had been aware of, permitted and approved the work which was being done by the plaintiff.
Another contention on the part of the defendant is that the plaintiffs have an adequate remedy at law since they can bring suit at law against Lakes, Inc. The case of Dewing v. Nelson & Company, Inc., Fla. App.1960, 117 So.2d 744, is cited as authority for this contention. However, in this case the court determined that there was no lien against the land for the furnishing of fertilizer, either statutory or equitable, and that the only recourse to one furnishing fertilizer under such circumstances is either for a lien on the crop or a suit at law, there being no lien against the land whatsoever.
The contentions of the appellant are without merit and the final decree appealed from is affirmed.
ALLEN, Acting C. J., and SHANNON, J., concur.